CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 13 2012

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **DIEGO ALEGRIA SANCHEZ,** | ) |
| | ) Criminal Action No. 7:10CR72 |
| Petitioner, | ) |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| **UNITED STATES OF AMERICA,** | ) By: Hon. James C. Turk |
| | ) Senior United States District Judge |
| Respondent. | ) |

Petitioner Diego Alegria Sanchez ("Sanchez"), proceeding pro se, brings this action as a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. In his motion Sanchez raises a single ground for relief: he contends that he was denied effective assistance of counsel at sentencing because his counsel failed to object to a two-level increase in his offense level based on his role in the offense. See U.S.S.G. § 3B1.1(c). Respondent filed a Motion to Dismiss. ECF No. 98. In its Motion, the Government first contends that Sanchez's claim is barred by his waiver of § 2255 rights, and also argues that the claim fails on its merits regardless of the waiver.

The Government's reliance on Sanchez's waiver is inexplicable, given that the plain language of the waiver expressly excludes ineffective assistance of counsel from its scope. ECF No. 53, at 9 (waiving "any right to collaterally attack . . . any order issues in this matter, unless such attack is based on ineffective assistance of counsel") (emphasis added). Accordingly, this Court rejects any argument that Sanchez's claim here is barred by his limited waiver of § 2255 rights. It nonetheless concludes that Sanchez is not entitled to relief on his claim because he cannot establish he was prejudiced by any alleged error by counsel. For this reason, and upon review of the

submissions of the parties and the underlying criminal record, Case No. 7:10CR72, the Court finds that Respondent's Motion to Dismiss, ECF No. 98, must be granted.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. The Offense Conduct[1]

In early 2010, a confidential source was used by law enforcement officials to investigate Sanchez, who was known as a methamphetamine trafficker. During two different controlled purchases in Montgomery County, Virginia in January and February 2010, audio monitoring devices recorded Sanchez selling methamphetamine. In August 2010, another controlled buy from Sanchez with a different cooperating individual resulted in Sanchez's arrest.[2] The day after his arrest, law enforcement officials executed a state search warrant at the residence Sanchez shared with co-defendant Maribel Madrigal Mujica. Agents recovered over $3,000 in U.S. currency, about six ounces of methamphetamine, cocaine, drug paraphernalia and four firearms.

Additionally, Mujica was present at the time of the search, and she made both self-incriminating statements and statements incriminating Sanchez after she was advised of her Miranda rights. These included statements that she went with Sanchez on various trips to obtain distribution quantities of methamphetamine and that it was her job to be in the vehicle to make their trips look more legitimate. See ECF 97, Transcript of Guilty Plea Hearing (hereinafter "Plea Tr.") at 23-24.

---

[1] The offense conduct is taken almost exclusively from Sanchez's Presentence Investigation Report. See ECF No. 82.

[2] An additional transaction in which Sanchez purchased a large quantity of methamphetamine from his co-defendant Vela later led to the charges against Vela.

**B. Procedural Background**

On November 18, 2010, a federal grand jury charged Sanchez, Mujica, and Vela with conspiracy to distribute and possess with intent to distribute more than 500 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846. Sanchez was also named in three separate distribution counts involving both methamphetamine and cocaine (Counts Two, Three and Five) and with a single count of possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) and 18 U.S.C. § 2 (Count Six).

Sanchez pleaded guilty to Counts One and Six on March 31, 2011, pursuant to a written plea agreement. Under the terms of the plea agreement, the United States agreed to move for dismissal of the remaining counts at sentencing, and further agreed to recommend a three-level reduction in offense level for acceptance of responsibility and a sentence at the low end of the applicable guideline range. ECF No. 53, at 2-3. The parties also stipulated that the guideline and base offense level for the drug charge should be 36, and that he should be held responsible for more than 5 but less than 15 kilograms of a methamphetamine mixture. Id. at 3. As pertinent here, the Plea Agreement also states that Sanchez "understand[s] other guideline sections may be applicable to [his] case and the United States and [he] will be free to argue whether these sections should or should not apply . . ." Id. at 4.[3]

Consistent with the terms of Sanchez's written plea agreement, the Presentence Investigation Report ("PSR") held him responsible for between five and fifteen kilograms of a methamphetamine mixture, resulting in a base offense level of 36. ECF No. 82, PSR, at The PSR

---

[3] As noted above, see supra at 1, the Plea Agreement also contains a waiver of § 2255 rights, but that waiver expressly allows claims of ineffective assistance counsel. Since Sanchez's only claim herein is an ineffective assistance of counsel claim, the waiver clearly does not apply to bar his claim.

also recommended a two-level increase for Sanchez's role in the offense, pursuant to U.S.S.G. § 3B1.1(c), finding that he was an organizer, leader, manager, or supervisor in the criminal activity. Id. at ¶ 22. This adjustment was based on a finding that Sanchez directed the activities of Mujica. Id. at ¶ 12. After a three-level adjustment for acceptance of responsibility, Sanchez's total offense level was a 35. Id. at ¶¶ 25-28. When coupled with his criminal history category of I, his advisory guideline range on Count One was 168 to 210 months, and the advisory guideline range on Count Six was 60 months, to be imposed consecutively, for a total term of 228 months.

At the sentencing hearing, Sanchez's counsel stated that there were no objections to the PSR. The Court adopted the PSR as written and concluded that the advisory guideline ranges were accurately set forth in the PSR. See ECF 88, Sentencing Transcript ("Sent. Tr."). at 4 (Court describing Sanchez as "an organizer of the undertaking" and adding two points). Based on the substantial assistance motion of the United States, and with the agreement of the United States and his counsel, the Court sentenced Sanchez to a total term of 140 months (80 months on Count One and 60 months on Count Six), to run consecutively. Judgment was entered on June 29, 2011 (ECF No. 80) and Sanchez did not appeal.

On June 28, 2012, the Court received Sanchez's timely motion pursuant to 28 U.S.C. § 2255.

## II. STANDARD OF REVIEW

In order to move the court to vacate, set aside or correct sentence under § 2255, a petitioner must prove that one of the following occurred: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States"; (2) that "the court was without jurisdiction to impose such a sentence"; or (3) that "the sentence was in excess of the maximum authorized by law, or is

4

otherwise subject to collateral attack." 28 U.S.C. § 2255. In this case, Sanchez predicates his claim on the first ground, claiming that his sentence was imposed in violation of the Constitution or laws of the United States. Sanchez bears the burden of proving grounds for a collateral attack by a preponderance of the evidence. Hall v. United States, 30 F. Supp. 2d 883, 889 (E.D. Va. 1998); Jacobs v. United States, 350 F.2d 571, 574 (4th Cir. 1965).

## III. ANALYSIS

### A. General Standards Governing Ineffective Assistance of Counsel Claims

In order to prevail on his ineffective assistance of counsel claim, Sanchez must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984). Specifically, Sanchez must demonstrate both that his "counsel's performance was deficient" and "that the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687. Failure to satisfy either one of these prongs is fatal to the claim and thus there is no need "to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

In order to satisfy the deficiency prong, Sanchez must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. This requires proof that "counsel's representation fell below an objective standard of reasonableness." Id. at 688. In fairly evaluating an attorney's conduct, "judicial scrutiny . . . must be highly deferential, and "every effort [must] be made to eliminate the distorting effects of hindsight." Id. at 689. Notably, moreover, Strickland establishes a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

As to the prejudice prong, Sanchez "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id.

at 691. To establish prejudice in the context of sentencing, he must show a reasonable probability that he would have received a lesser sentence. Glover v. United States, 531 U.S. 198, 203-04 (2001) (rejecting the Seventh Circuit's rule that "a minimal amount of additional time in prison cannot constitute prejudice" and stating instead that "any amount of [additional] jail time has Sixth Amendment significance."); Jones v. United States, 2011 WL 6780786, *2 (E.D.N.C. Dec. 27, 2011) (relying on Glover to conclude a "petitioner must show a reasonable probability that he would have received a more lenient sentence" absent counsel's deficient performance); United States v. Spafford, 2010 WL 2991034, *2 (W.D. Va. Jul. 28, 2010) (a § 2255 petitioner demonstrates prejudice by showing that he received additional prison time at sentencing).

### B. Sanchez's Ineffective Assistance of Counsel Claim

Here, it is unnecessary to address whether counsel was constitutionally deficient for failing to challenge the two-level role adjustment,[4] because Sanchez is unable to establish prejudice. That is, he cannot show a reasonable probability that he would have received a lesser sentence, had a challenge to the role adjustment been made. Notably, there was sufficient evidence in the record to support the role adjustment. As the Fourth Circuit has explained:

> In determining whether a sentencing enhancement is appropriate under USSG § 3B1.1, a district court should consider whether the defendant exercised decision making authority for the venture, whether he recruited others to participate in the crime, whether he took part in planning or organizing the offense, and the degree of control and authority that he exercised over others. See USSG § 3B1.1, app. 4 (2002). Leadership over only one other participant is sufficient as long as there is some control exercised. United States v. Harriott, 976 F.2d 198, 200 (4th Cir.1992).

---

[4] Because no affidavit from defense counsel is before the Court, the Court does not know counsel's reasons for not filing an objection to the role adjustment. The fact that such a role was supported by the record may have been the reason why.

6

United States v. Rashwan, 328 F.3d 160 (4th Cir. 2003).

Here, the evidence supports that Mujica was involved in the trafficking because of Sanchez, that she was present during deals because it was "her job . . . to be in the vehicle" and provide cover, to make it look like they were a couple out together, instead of simply a lone single male. Plea Tr. at 24. Also, whereas there was ample evidence that Sanchez arranged the logistics of payments and deals, there is no evidence that Mujica was involved in arranging any of the drug deals or played any role other than to accompany Sanchez and follow his lead.[5] All of these factors support the application of the enhancement here. See also, e.g., United States v. Bartley, 230 F.3d 667, 674 (4th Cir. 2000) (sentence enhancement affirmed where evidence showed that defendant "arranged the logistics of marijuana deliveries or payments, and at the very least coordinated the activities of others"); United States v. Harriott, 976 F.2d 198 (4th Cir. 1992) (district court committed clear error in finding that U.S.S.G. § 3B1.1(c) did not apply to defendant who drove a woman with him to a location to buy crack cocaine, had her buy a girdle and wear it to hide the drugs, bought her a bus ticket and dropped her off and picked her up).

It is also worth noting that Sanchez failed to voice any concerns during his sentencing about his counsel's assistance and answered in the affirmative when the court asked Sanchez whether the "sentence imposed was in keeping with the plea agreement." Sent. Tr. at 9. Additionally, as the Government correctly notes, it moved for a substantial reduction in Sanchez's sentence, and the court granted that relief, finding that the sentence imposed was an appropriate

---

[5] Sanchez attaches an affidavit to his § 2255 motion, in which he avers that he "did not control [Mujica's] actions [or] arrange for her sales." ECF No. 89 at 27. Instead, he contends that she was a "separate, independent participant." Id. Even if he and Mujica conducted separate transactions in addition to their joint transactions, his conduct during their joint transactions was certainly more culpable, since he was more involved in organizing, planning, and carrying them out, while Mujica simply rode along to provide cover. In the controlled buys, for instance, all the communication was apparently between the buyer and Sanchez. For this reason, too, the record supports the application of a § 3B1.1(c) enhancement.

7

sentence after considering the factors of 18 U.S.C. § 3553(a). Accordingly, Sanchez had already received a sentence much reduced from what the Guidelines recommended, and far below what he would have received had the court imposed an advisory guidelines sentence, even without the two-level role adjustment.

Based on the foregoing, the Court concludes that Sanchez is unable to establish that he was prejudiced by any deficiency of counsel. That is, even if his counsel had objected to the role enhancement, there is not a reasonable probability that the Court would have imposed a lesser sentence. Sanchez fails to show that the adjustment was improperly applied based on the evidence before the Court, and in any event, the Court imposed a reasonable sentence based on § 3553(a), and one far below the advisory guideline range. Accordingly, Sanchez's ineffective assistance of counsel claim is without merit.

### C. Certificate of Appealability

When a district court enters a final order denying a § 2255 motion the court must grant or deny a certificate of appealability. Rule 11(a) of the Rules Governing § 2255 Proceedings. A certificate of appealability should only issue if the petitioner has made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2255(c)(2). Because Sanchez has failed to make "a substantial showing of the denial of a constitutional right," for the reasons already outlined in this Memorandum Opinion, the Court finds that it would be inappropriate to grant a certificate of appealability in this case. If Sanchez intends to appeal and seek a certificate of appealability from the Court of Appeals for the Fourth Circuit, his first step is to file a notice of appeal with this court within 60 days of the date of entry of the final order, or within such extended period as the Court may grant pursuant to Rule 4(a)(5) of the Federal Rules of Appellate Procedure.

## IV. CONCLUSION

For the foregoing reasons, the court holds that Sanchez is not entitled to relief on his § 2255 motion. Accordingly, I will grant the Motion to Dismiss, dismiss Sanchez's § 2255 motion and deny him a certificate of appealability. An appropriate Order shall issue this day.

The Clerk is directed to send copies of this memorandum opinion and the accompanying final order to the petitioner and counsel of record for the respondent.

**ENTER:** This 12th day of November, 2012.

Hon. James C. Turk
Senior United States District Judge